## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| NANCY FAULK | CIVIL ACTION NO. 13-3129 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| ERIC SHINSEKI | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Record Document 32] submitted by Defendant, Eric Shinseki, in his capacity as the United States Secretary of Veterans Affairs, which prays for this Court to dismiss all claims brought against him by Plaintiff, Nancy Faulk.  Plaintiff asserts claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.  Upon consideration of the briefs filed by the parties and for the reasons stated below, Defendant's motion for summary judgement is **GRANTED** with respect to the discrimination claim and **DENIED** with respect to the retaliation claim.

### BACKGROUND

This case arises out of Plaintiff's employment at Overton Brooks Veterans Affairs Medical Center (the "medical center"), located in Shreveport, Louisiana.  In August of 2010, Plaintiff (Caucasian) was employed as the Associate Chief Nurse ("ACN") for Acute Care and Mental Health, Nurse IV.  Plaintiff was one of four Associate Chief Nurses. The other three ACNs were Kim Banks ("Banks") (African American), Harriet

Page 1 of  21

Cunningham ("Cunningham") (African American), and Imogene Thompson ("Thompson") (Caucasian).  All four ACNs worked under the supervision of Nurse Executive Beverly Rashad ("Rashad") (African American).

In August of 2010, Plaintiff, Rashad, the other three ACNs, and other medical center staff members were part of an investigation into allegations that nursing staff members had signed and/or initialed "standard operating procedures and required competency reviews for Reusable Medical Equipment" on behalf of other staff members. Record Document 51, p. 4.  The allegations were essentially that Plaintiff and others initialed and/or signed training verification documents on behalf of Renna Tolbert-Ford ("Tolbert-Ford") (African American), a nurse manager at the medical center. Upon questioning, Plaintiff admitted that she "placed Ms. Tolbert-Ford's initials on several [of] the competency checklists after being assured the competency checklists had [been] completed." Record Documents 32-7, p. 7; 51, pp. 3-4.  Plaintiff alleged that she and the other ACNs initialed the documents at the instruction of their supervisor, Rashad. She also claimed that the competency documents were already signed by Tolbert-Ford, and that she and the other ACNs were simply adding Tolbert-Ford's initials to sections within the documents.  Record Document 32-7, p. 7.  All four ACNs admitted initialing the documents, and on August 20, 2010, all four ACNs (including Plaintiff) were placed on administrative leave.  Record Document 51, pp. 4-5.  On August 26, 2010, an Administrative Investigation Board ("AIB") was convened to investigate the matter.  All four ACNs, Rashad, and other medical center personnel were interviewed by the AIB.

On September 28, 2010, Plaintiff provided a supplementary statement to the AIB, in which she stated that in early August 2010, she "received information that a preemptive decision to permanently remove the Nurse Executive (Rashad) from her position was being discussed." Document 32-14, p. 1.  In her statement, she questioned whether there was a connection between the ongoing investigation and this rumor she allegedly heard concerning a plan to remove Rashad from her position as Nurse Executive.  At the outset of the statement, Plaintiff wrote, "I am aware that I risk reprisal in coming forward with such information." Id.  In that statement, Plaintiff did not mention race; however, Plaintiff alleges that she informed leadership that she believed race was a motivating factor in the events unfolding around the investigation. Document 51, p. 6.  Specifically, Plaintiff alleges that she informed the AIB that in early August 2010 she received information that "there was a conspiracy by the VA's white senior leadership to remove Rashad."  Record Document 39-4, pp. 3-4.

The AIB issued a Report of Investigation on October 15, 2010 which recommended that "[a]ppropriate corrective action be taken in regard to the Nursing staff identified in this report who initialed, signed or otherwise falsified competency documentation . . . ." Record Document 32-10, p. 13.  All four ACNs were identified in the report.  All four ACNs were reassigned upon their return from administrative leave. Record Document 51, p. 8.  On December 2, 2010, Sheila Creekmore ("Creekmore") (Caucasian), the Acting Nurse Executive, issued a letter notifying all four ACNs of the

"proposed discharge" she recommended following the AIB investigation. Id. at p. 9;
see Record Document 32-15.

After receiving notice of the proposed discharge, Plaintiff applied for the position
of Assistant Chief of Mental Health, but was not interviewed. Record Document 51, pp.
9-10. In February 2011, it was announced that a psychiatrist, Ronald Schneider
("Schneider"), was selected for the position. Plaintiff was notified that she was not
considered for the position due to administrative error, and after the position was re-
announced, Plaintiff reapplied. Plaintiff was interviewed, but Schneider was again
chosen for the position. Id. at pp. 10-11.

On March 9, 2011, Plaintiff filed a formal grievance wherein she expressed
concern that she would not be properly considered for any administrative position at the
medical center due to her involvement in the high profile "case" involving the
investigation. See Record Document 32-19. In the grievance, Plaintiff stated that she
was aware that her "two African-American co-workers (Ms. Cunningham and Ms. Banks)
ha[d] made complaints of race discrimination and that their EEO's [sic] ha[d] been
accepted for investigation." Id. at p. 2. She went on to explain that she supports
Cunningham and Banks, and was concerned that she was being retaliated against for
her support of their EEO complaints. Id.

In April of 2011, Plaintiff alleges that she requested to be detailed as Deputy
Nurse Executive to the Perry Point VA Medical Center in Perry Point, Maryland. Record
Document 39-1, p. 13. Plaintiff claims that, while she was not approved to go on the

detail, Thompson, another former ACN, was approved to go on detail to Las Vegas. Plaintiff further alleges that she had filed an EEO claim, while Thompson had not.  Id.; Record Document 51, p. 11.

On April 14, 2011, Kathleen Fogarty ("Fogarty"), Acting Center Director, issued a "final decision" to mitigate the proposed discharge to a reduction in grade for Plaintiff and the other ACNs from Nurse IV to Nurse III.  Record Document 51, p. 9.  Two of the ACNs (one African American and one Caucasian) retired prior to the effective date of the "final decision."  Id.

Plaintiff alleges that, as a result of her demotion, she suffered a pay decrease of approximately $15,000 annually.  By contrast, Plaintiff alleges that Banks, the only remaining ACN still employed with the Veterans Administration, had her salary increased by approximately $600 annually in spite of her demotion.  Id. at p. 23.

In addition to these allegations, Plaintiff asserts that she was forced to inactivate her Advanced Practice Nursing License, was not allowed to participate in speaking engagements, and that "actions were taken by the Acting Nurse Executive to have Plaintiff removed from the National Mental Health Field Advisory Committee."  Record Document 1, p. 3.  She also claims that she was denied consideration for other positions within the medical center.  Record Document 39-1, p. 16.

Plaintiff filed a formal EEO complaint on May 5, 2011 alleging reprisal.  See Record Document 32-22, p. 3.  Plaintiff filed additional complaints on April 6, 2012, and July 27, 2012.  Id. at p. 2.  On August 28, 2013, the Department of Veterans Affairs

Office of Employment Discrimination Complaint Adjudication issued its Final Agency

Decision and Right to File a Civil Action.  Record Document 32-22.

Based on the foregoing facts, Plaintiff filed this suit alleging race discrimination

and retaliation in violation of 42 U.S.C. § 2000(e), et seq. on November 25, 2013.

Plaintiff seeks lost wages, front pay, back pay, compensatory and punitive damages,

costs, attorneys' fees, and other non-monetary relief.  Record Document 1, pp. 6-7.  In

light of her claims, Defendant filed this Motion for Summary Judgment.

## **STANDARD**

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."[1] Summary judgment is

appropriate when the pleadings, answers to interrogatories, admissions, depositions,

and affidavits on file indicate that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  When the burden at trial will rest on the

non-moving party, the moving party need not produce evidence to negate the elements

of the non-moving party's case; rather, it need only point out the absence of supporting

evidence.  See id. at 322-323.

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by

the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  Local Rule 56.2.

## LAW AND ANALYSIS

Title VII of the Civil Rights Act makes it an unlawful employment practice for an employer to refuse to hire or to discharge, or otherwise discriminate against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1).  In addition, Title VII prohibits an employer from discriminating against an employee or applicant for employment because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

### 1. Discrimination Claim

In the absence of direct evidence of discrimination, Title VII cases are governed by the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973).  McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  First, Plaintiff must establish a prima facie case of discrimination, "which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly

situated employees outside the protected group." McCoy, 492 F.3d at 556; Byers v. Dallas Morning News, Inc., 209 F.3d 419, 425 (5th Cir. 2000). If the plaintiff makes a prima facie showing, the employer must then provide a legitimate, non-discriminatory reason for the employment action. Byers, 209 F.3d at 425. "The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment." Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (quotations and citations omitted). If the employer provides a legitimate, non-discriminatory reason, "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Id. (citation omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 249, 101 S. Ct. 1089, 1092, 67 L. Ed. 2d 207 (1981)).

Plaintiff argues that she was demoted from Nurse VI to Nurse III as an "attempt to mask the original racial discrimination against Rashad, Banks, and Cunningham with reverse racial discrimination" against her. Record Document 39-1, p. 19. As to the prima facie case, Plaintiff has satisfied the first three prongs of the analysis because it is

undisputed that Plaintiff was qualified for her position as an ACN and that she was removed from that position.  In addition, the Fifth Circuit has held that a plaintiff will not be prevented from making a prima facie case of reverse discrimination simply because she is not a racial minority.  Byers, 209 F.3d at 426.  As to the fourth prong, Plaintiff argues that her similarly situated African American comparator, Banks, was not, "in practical effect," treated same as Plaintiff.  Despite both nurses being demoted, Plaintiff alleges that while she suffered a pay decrease of $15,000 per year, Banks received an increase of $600 per year.[2]  Record Document 39-1, p. 19.  Defendant contends there was essentially no difference in treatment: all four ACNs were placed on administrative leave, all four ACNs were reassigned to non-management positions, and all four ACNs were issued a final decision of a reduction in grade from Nurse IV to Nurse III.  Record Document 33, pp. 20-21.  Plaintiff does not dispute these facts, but asserts that the disparity in pay suffices to form a prima facie case of race discrimination.  Record Document 39-1, p. 19.  Defendant does not dispute the alleged pay disparity.  As such, the Court will assume that Plaintiff has made a prima facie case of racial discrimination.

Because Plaintiff has made a prima facie showing, Defendant has the burden of providing a legitimate, non-discriminatory reason for the demotion and resulting pay

---

[2] The deposition testimony of Kathleen Fogarty, added as an attachment to Plaintiff's opposition, is that the salary disparities were due to differences within the employees' pay grades.  Record Document 39-11, pp. 4-6.  This testimony appears to be corroborated by the testimony of Banks.  In her affidavit, Banks stated, "we were all downgraded," and, "I was fairly new. I was the last of the four to come on board as far as obtaining my Nurse 4; so I didn't feel quite the hurt she and Ms. Cunningham and Imogene Thompson felt."  Record Document 39-6, p. 7.

decrease.  Defendant has satisfied this burden in arguing that the demotion was due to Plaintiff's admitted involvement in the competency documents issue.  Record Document 33, p. 24.

Plaintiff next has the burden of showing that the proposed reason for the employment action was either pretextual or that discrimination was a motivating factor. Plaintiff has not stated any facts demonstrating that discrimination was a motivating factor in the decision to demote her.  To the contrary, Plaintiff admits that she, along with the other three ACNs, were involved in the competency documents matter.[3] Plaintiff admits that she was placed on administrative leave, assigned to a non-managerial position, and issued a final decision of demotion from Nurse IV to Nurse III *along with* all of the other ACNs (two of whom were African American).  Summary judgment evidence provided by both Plaintiff and Defendant overwhelmingly supports the assertion that Plaintiff was demoted due to her participation in the competency documents issue.  The only objective evidence of discrimination offered by Plaintiff is the alleged fact that when Dr. Short ("Short"), the Acting Medical Center Director, originally confronted Thompson, the other Caucasian ACN, about the competency documents, Short mentioned the involvement of only African American employees. Record Document 39-1, p. 7.  This, Plaintiff suggests, evidences that the investigation and subsequent outcome were racially motivated.[4]  Even if true, this allegation does not

---

[3]  Plaintiff specifically admits that she placed another employee's initials on competency documents.  Record Document 51, pp. 3-4, 19.

[4]  Plaintiff additionally cites her own testimony that she believed there was a conspiracy "by the white leadership of Overton Brooks to justify a long-standing effort to oust Rashad," and the testimony of

establish or even directly suggest that discrimination was a motivating factor in the decision to demote Plaintiff. As an initial matter, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (quotations and citation omitted). Furthermore, it is undisputed that once the involvement of all four ACNs was disclosed, action was taken against all. Plaintiff offers no other examples of purported activity tending to prove discrimination. Thus, even viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to satisfy her burden of proving that discrimination was a motivating factor in Defendant's decision to demote her. For these reasons, the Court finds that there is no genuine issue of material fact surrounding Plaintiff's discrimination claim, and as such, summary judgment is proper.

## 2. Retaliation Claim

Analysis of Plaintiff's retaliation claim will involve the same burden-shifting framework. "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy, 492 F.3d at 556–57 (citations omitted). Protected activity under Title VII includes opposition to any practice made unlawful under Title VII, as well as making a charge, testifying, assisting, or

---

her coworkers that they believed the investigation into the competency documents was racially motivated. Record Documents 39-1, p. 7; 39-6, p. 5; 39-8, pp. 6-7, 11; 39-9, pp. 3-5.

participating "in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a);  E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 240 (5th Cir. 2016).  Plaintiff claims that the following are protected activities: 1) her September 8, 2010 statement to the AIB; 2) her September 28, 2010 supplemental statement "and verbal opposition to racial discrimination on behalf of Rashad"; 3) her support for the EEO claims of Rashad, Banks, and Cunningham during the period of September 28, 2010 and December 31, 2010; 4) her December 8, 2010 response to her proposed discharge and alleged assertion of support of the race discrimination claims of Rashad, Banks, and Cunningham; 5) a March 9, 2011 grievance and EEO claim[5]; 6) the amendments to her EEO claim on May 17, June 6, June 10, and June 26, 2011; 7) the filing of her second EEO claim on January 20, 2012; 8) the filing of her third EEO claim on October 2, 2012; and 9) the amendment of her third EEO claim on October 24, 2012.  Record Document 39-3.

Defendant asserts that protected activity could not have occurred until March of 2011, and therefore any employment actions taken before then could not be considered retaliatory.  Record Documents 33, pp. 18-19; 44, p. 5.  Specifically, Defendant argues that Plaintiff did not oppose discrimination until March of 2011, if at all, and that there is no evidence that Plaintiff supported the African American ACNs in their EEO complaints prior to her March 2011 grievance.  Record Document 33, pp. 18-19.  Thus, it is

---

[5] The Final Agency Decision issued by the Department of Veterans Affairs, Office of Employment Discrimination and Complaint Adjudication [Record Document 32-22], does not suggest that Plaintiff filed an EEO claim in March of 2011, but it does state that she "contacted an EEO Counselor on March 23, 2011, alleging that she was discriminated against based on race and reprisal with respect to her working conditions."  Record Document 32-22, p. 3.

disputed whether numbers one through four, above, constitute protected activity.  As to number one, the Court has not found, nor has Plaintiff cited to any statements within her September 8, 2010 statement to the AIB [Record Document 39-5, pp. 25-26] which could suggest opposition to discrimination.  Similarly, Plaintiff has not cited to any statements within her September 28, 2010 supplementary statement [Record Document 39-5, pp. 27-29] that could be considered opposition to discrimination.  In her supplemental statement, Plaintiff does express concern about a rumor she allegedly heard concerning a "preemptive decision" to remove the Nurse Executive (Rashad), but Plaintiff never mentions race or discrimination.  Record Document 39-5, p. 27.  As to Plaintiff's claims that, also on September 28, 2010, she expressed "verbal opposition to racial discrimination on behalf of Rashad," and that she supported the EEO claims of Rashad, Banks, and Cunningham during the period of September 28, 2010 and December 31, 2010, Plaintiff has made similar allegations in her declaration and her deposition.  See Record Documents 39-1, pp. 8-9; 39-4, p. 4; 39-5, p. 13. Thus, the Court will assume that Plaintiff did as she claims.  As to number four, Plaintiff's December 8, 2010 written response to her proposed discharge contains no reference to race or any kind of discrimination.  Record Document 39-5, pp. 47-48.  However, Plaintiff has stated in her declaration that when she met with Fogarty to discuss the proposed discharge, she "made it clear" that she believed the competency investigation was "part of a plan to oust African Americans."  Record Document 39-4, p. 5.

Page 14 of  21

Assuming Plaintiff's claims that she verbally opposed racial discrimination on behalf of her co-workers are true, this would constitute protected activity as long as Plaintiff had "a reasonable belief that the employer was engaged in unlawful employment practices." Byers, 209 F.3d at 428 (citations omitted); see Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348-49 (5th Cir. 2007). Thus, the question becomes whether Plaintiff had a reasonable belief that Defendant was engaged in discrimination. Plaintiff has not alleged facts sufficient for this Court to find that her belief was objectively reasonable. Plaintiff has clearly asserted her personal belief that her employer was engaged in discrimination, but has offered very little objective evidence. As previously mentioned, Plaintiff asserts that the fact that only African American employees were initially mentioned as being involved in the competency documents issue is evidence of discrimination. Plaintiff has also offered the deposition testimony of the other ACNs and Rashad, who similarly appear to believe that discrimination was afoot. However, this evidence does not provide the Court with sufficient facts to infer that Plaintiff's belief was objectively reasonable. Thus, because the Court cannot find that Plaintiff's belief was objectively reasonable, the Court cannot consider the alleged pre-March 2011 events to be protected activity and will therefore not consider alleged adverse actions prior to March of 2011.

It is undisputed that numbers five through nine, above, all concerning EEO activity, qualify as protected activities for purposes of Title VII. Thus, prong one of the prima facie case has been satisfied. Plaintiff must next show that her employer took an

adverse employment action against her.  For purposes of a retaliation claim, an adverse

employment action is "any action that 'might well have dissuaded a reasonable worker

from making or supporting a charge of discrimination.'"  McCoy, 492 F.3d at 559

(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 77, 126 S. Ct. 2405,

2420, 165 L. Ed. 2d 345 (2006)).  Plaintiff designates the following as adverse

employment actions: 1) the failure to interview her for the position of Assistant Chief,

Mental Health in January 2011; 2) failing to select her for the position of Assistant

Chief, Mental Health in February 2011; 3) the denial of detail to Perry Point VA in April

2011; 4) the March 25, 2011 demotion from Nurse IV to Nurse III; 5) the May 13, 2011

non-selection for Assistant Chief, Mental Health; 6) the demand that she be removed

from the National Mental Health Field Advisory Committee for Mental Health in June

2011;[6] 7) reassignment to the business office in September 2011, which "required"

Plaintiff to lose her Advanced Practice Nursing license; 8) the alleged making of

comments to Plaintiff's co-workers that Plaintiff was "toxic" and "radioactive" and

"would never be placed in a supervisory position"; and 9) the 2012 failure to select

Plaintiff for the position of Associate Chief Nurse IV, Mental Health. Record Document

39-1, p. 21.  For the reasons discussed above, the Court will not consider adverse

actions occurring before March of 2011.  For the remaining actions, the Court finds that

---

[6] Whether Defendant exercised control in the decision to remove Plaintiff from the National
Mental Health Field Advisory Committee for Mental Health is a contested issue of fact that the Court will
resolve in favor of Plaintiff at this time.  Record Document 33, p. 22; see Little v. Liquid Air Corp., 37 F.3d
1069, 1075 (5th Cir. 1994).  Here, Plaintiff has offered evidence that suggests Creekmore had a role in
Plaintiff's removal from the committee. See Record Document 39-13, p. 5.

they are of such a nature that they might have dissuaded a reasonable employee from filing a charge of discrimination.

Next, Plaintiff must show a causal connection between the protected activity and the adverse action. "A plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" Feist, 730 F.3d at 454 (quoting McCoy, 492 F.3d at 562). Plaintiff supports her argument that she has satisfied this prong by pointing to her "exemplary" employment history with the medical center, as well as the timing between protected activities and the adverse actions. Record Document 39-1, p. 23. Here, Plaintiff participated in protected activities between March 2011 and October 2012. Adverse employment actions occurred between April 2011 and August 2012. The time period between the first protected activity and the first adverse action was less than two months. This close proximity, in conjunction with the number of alleged adverse actions, is enough to satisfy the third prong of Plaintiff's prima facie case. See Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 368 (5th Cir. 2013) (finding a period of three months, coupled with gradual changes in employee's duties, enough to satisfy the third prong); see also Feist, 730 F.3d at 454 (noting that a period of up to four months may be sufficiently close).

Because Plaintiff has made a prima facie case, Defendant has the burden of providing a legitimate, non-retaliatory reason for its employment action. The Court finds that Defendant has satisfied this burden in arguing that its actions were due to

Page 17 of 21

Plaintiff's admitted involvement in the competency documents issue. Record Document 44, p. 8. In the next step of the analysis, the burden shifts back to Plaintiff to "demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." Feist, 730 F.3d at 454 (quotations and citations omitted). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." Id. (quoting Long v. Eastfield Coll., 88 F.3d 300, 308 (5th Cir. 1996)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Haire, 719 F.3d at 369 (quoting Long, 88 F.3d at 308).

As evidence of pretext, Plaintiff alleges that Thompson, the other Caucasian ACN, was treated differently despite the fact that both were involved in the competency documents issue. Plaintiff claims that Thompson was "allowed to detail to Las Vegas," while she was "denied a transfer to Perry-Point." Record Document 39-1, p. 25. In addition, Plaintiff claims that Thompson received an "outstanding" performance evaluation at the same time that Plaintiff was given a "minimally satisfactory" evaluation. Id. Plaintiff claims that Thompson was the only ACN involved in the competency documents issue who did not file an EEO complaint, while Defendant disputes this fact. Defendant's evidence suggests Thompson did file an EEO complaint

on May 27, 2011.  Record Document 48, p. 1.  Plaintiff's evidence consists of an

affidavit wherein Thompson stated that she received an "outstanding" rating from

Short.  Thompson stated, "I did receive that rating. I believe it was on March 21st."

Record Document 39-10, p. 13.  In addition, Thompson's testimony suggests that by

March 21, 2011, she had already accepted a position in Las Vegas.  Id. at pp. 13-14.

Thus, while Plaintiff and Defendant disagree as to whether Thompson, in fact, filed an

EEO complaint, because the timing of the alleged complaint appears to be after the

point in time at which Thompson received her performance evaluation and accepted a

position in Las Vegas, the issue of whether a complaint was indeed filed is not

important to prove Plaintiff's point.  Plaintiff's argument that her poor performance

rating and denial of transfer were due to retaliation is not discounted by the fact that

Thompson may have filed an EEO complaint *after* she received a higher performance

rating and was allegedly allowed to transfer to Las Vegas.

  As additional evidence of pretext, Plaintiff claims that Defendant violated its own

policies in not selecting her for the Associate Chief Nurse, Mental Health position in

2012 after she was recommended by the hiring committee.  Record Document 39-1, p.

28; see Feist, 730 F.3d at 454-55 (noting that evidence of an employer's departure from

typical policies and procedures is relevant to the determination of whether causation

exists between protected activity and adverse action).  Plaintiff supports this assertion

with deposition testimony from a member of the interview committee and the affidavit

of Rashad.  Record Documents 39-15, p. 2; 39-7, p. 3.  Defendant does not clearly

dispute whether accepting the recommendation of the interview committee is against the policies and procedures of the medical center, but instead offers testimony suggesting that the hiring official was free to disregard the recommendation of the committee.  Record Document 44, p. 9.

Finally, Plaintiff points to her "exemplary" employment history with the medical center as evidence of pretext, suggesting that she was "no longer valued as an employee" after participating in protected activity.  Record Document 39-1, p. 23.  In support of this contention, Plaintiff cites deposition testimony of multiple employees. Specifically, Plaintiff cites the testimony of Fogarty, who issued the final decision to demote all four ACNs, that Plaintiff "had a very outstanding career," and had never faced disciplinary action prior to the competency documents issue.  Record Document 39-11, p. 4.

Thus, as evidence of pretext, Plaintiff has alleged varying treatment between herself and her similarly situated co-worker, the violation of the medical center's own policies and procedures, and has presented evidence of an employment record devoid of prior disciplinary action.  After considering all evidence offered by both parties, the Court finds that Plaintiff has indeed shown a "'conflict in substantial evidence" on the question of whether Defendant would have taken the adverse employment actions "but for" Plaintiff's protected activity.  See Haire, 719 F.3d at 369 (finding summary judgment inappropriate when plaintiff and defendant made competing allegations, stating that "credibility determinations are best left for trial").

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is hereby **GRANTED IN PART** and **DENIED IN PART**.  Because the Court finds that there is no genuine issue of material fact concerning Plaintiff's discrimination claim, summary judgment is **GRANTED** as to Plaintiff's discrimination claim.  Because the Court finds that there are genuine issues of material fact concerning whether Defendant retaliated against Plaintiff for participation in protected activities, Defendant's motion for summary judgment is **DENIED** as to Plaintiff's retaliation claim.

**THUS DONE AND SIGNED** this ____ day of October, 2016 in Shreveport, Louisiana.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE